IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALAN EARP,                          :
                Petitioner,         :     CIVIL ACTION
                                    :
        v.                          :
                                    :
THOMAS LAVAN, et al.,               :
                Respondents         :     NO. 04-1991

MEMORANDUM AND ORDER

McLaughlin, J.                               February 15, 2006

        In this pro se habeas petition, the petitioner has
raised several prosecutorial misconduct and ineffective
assistance of counsel claims stemming from his 1992 conviction
for first degree murder and possessing an instrument of crime.
The petitioner was convicted of murdering Aaron Pendleton in
1991.  The petitioner was 16-years-old at the time of the murder
and he received a sentence of life in prison.

        The Court agrees with the report and recommendation of
the Chief United States Magistrate Judge M. Faith Angell that the
petitioner's petition for habeas corpus should be denied and
dismissed.  The Court will write separately with regard to some
of the petitioner's claims in light of the Court's independent
review of the petition for habeas corpus and the petitioner's
objections to the report and recommendation.

        Specifically, the Court adopts the following sections
of the report and recommendation: the background section, section

1

I of the discussion regarding the timeliness of the petitioner's claims; section II. A. of the discussion regarding the legal standards for exhaustion and procedural default; section II. C. holding that the petitioner's sixth and seventh habeas claims are procedurally defaulted; and section III of the discussion regarding the standard of review of state court proceedings.

The Court will write separately with respect to the remaining sections of the report and recommendation. All of the issues the petitioner has raised are claims of prosecutorial misconduct or ineffective assistance of counsel.

I. <u>Prosecutorial Misconduct Claims</u>

The petitioner has raised three claims of prosecutorial misconduct (identified in grounds one, two and five of his habeas petition). Specifically, the petitioner has alleged that the prosecutor: (1) inflamed the passions of the jury by invoking sympathy during closing; (2) consistently ignored the trial court's order not to mention a prior stabbing incident where the petitioner allegedly stabbed the victim, Aaron Pendleton;[1] and

---

[1] The petitioner raised this claim on direct appeal, but framed the issue as a state law claim. The respondents argued that because the petitioner did not raise this as a claim based on federal law in state court, the claim is not exhausted.

The petitioner did not reference the United States Constitution or cite to federal law when this issue was raised in state court. However, in considering whether a claim has been exhausted, a court should look to "the substance of the claim presented to the state courts, rather than its technical

(3) improperly labeled the petitioner's testimony as less than truthful.[2]  With respect to (1) and (3) the petitioner argues that his counsel was ineffective for failing to request a mistrial or raise these issues on appeal.[3]  For (2) the

---

designation." Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992).

A prosecutor's comments can rise to the level of unfairness so as to violate a defendant's due process rights. See Darden v. Wainwright, 477 U.S. 168, 181 (1986).  The Court concludes that the substance of this claim raised a federal claim, even if the petitioner did not explicitly make reference to federal law.  The respondents concede that this claim was raised on direct appeal and appealed to the Pennsylvania Supreme Court.  Thus, the Court concludes that the petitioner has exhausted this claim.

Additionally, the Superior Court only considered some of the alleged improper references to the stabbing incident, and concluded the other references were waived by the petitioner's failure to raise them in the Court of Common Pleas.  However, even considering all of the alleged improper references, the Court will deny the petitioner's habeas petition.  Thus the Court can reach the merits of this claim even if it has not been exhausted.  See 28 U.S.C. § 2254(b)(2).

[2] The Court has serious reservations as to whether this claim has been exhausted.  Although the petitioner raised the issue of prosecutorial misconduct during summation in the context of the prosecutor improperly invoking sympathy on direct appeal and appealed that issue up to the Pennsylvania Supreme Court, the petitioner did not raise an objection to comments in the prosecutor's summation regarding the petitioner's truthfulness until he filed a PCRA petition.  Because the petitioner did not appeal the Superior Court's decision denying his PCRA petition to the Pennsylvania Supreme Court, it does not appear he has exhausted this claim.  Because the Court will deny the petitioner's habeas petition, the Court can reach the merits of this claim even if it has not been exhausted.  See 28 U.S.C. § 2254(b)(2).

[3] The Court will consider the underlying prosecutorial misconduct claims before considering the issue of whether the petitioner's counsel was ineffective for failing to request a mistrial or pursue the issue on appeal.

3

petitioner argues that the state court erred by not granting a mistrial.

The Court agrees with the conclusions of the state courts that the petitioner is not entitled to relief on the basis of his prosecutorial misconduct claims and finds their conclusions reasonable under existing Supreme Court precedent. Any improper statements made by the prosecutor during the trial were not so egregious as to deny the petitioner a fair trial in light of the substantial evidence of the petitioner's guilt.

To grant a petition for habeas corpus based on claims of improper comments by a prosecutor, a court must find that the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (internal quotations ommitted).  A court should examine any offensive actions by a prosecutor in the context of the trial as a whole.  <u>Moore v. Morton</u>, 255 F.3d 95, 107 (3d Cir. 2001).  The severity of the prosecutor's actions, the effect of any curative instructions and the evidence against the defendant should be considered.  <u>Id.</u> "[T]he stronger the evidence against the defendant, the more likely that improper arguments or conduct have not rendered the trial unfair."  <u>Marshall v. Hendricks</u>, 307 F.3d 36, 69 (3d. Cir 2002).

The petitioner's first claim of prosecutorial

misconduct concerns a statement made by the prosecutor during summation, which, the petitioner argues improperly sought to invoke the sympathy of the jury.  In his summation, referring at first to the petitioner, the prosecutor stated:

> He's going to live with that the rest of his life. He's 17 years old, but what about Aaron Pendleton, he was 17 years old, too?  He doesn't even have the opportunity to decide what's going to happen with his life, his life is gone, the mother and his parents have to live with that for the rest of their lives.
>
> What about the age of the deceased, the victim, the man who was pleading for his life, the young man hardly more than a child pleading for his life, crying, we're supposed to forget that, forget his age and it's only the age of the defendant that counts?

(Trial Tr. 57-58, Sept. 24, 1992).

The petitioner's second claim of prosecutorial misconduct argues that the prosecutor repeatedly ignored the trial court's ruling that a prior incident where the petitioner allegedly stabbed the victim was inadmissible.

In his opening statement, the prosecutor stated that there was a prior incident where the petitioner stabbed the victim on a bus.  (Trial Tr. 22, Sept. 21, 1992).  The prosecutor then presented the testimony of Michael Jones who testified that there was a prior incident on a bus where the petitioner stabbed the victim.  (Trial Tr. 9, Sept. 22, 1992).  The petitioner's trial counsel did not object to this testimony or the prosecutor's opening argument, explaining that it was part of his trial strategy to show a history of disputes between the

petitioner and the victim.  (Trial Tr. 9-10, Sept. 22, 1992).

The prosecutor then presented the testimony of Justin Williams who also testified about the stabbing incident.  Mr. Williams testified that the petitioner chased the victim off the bus and around nearby cars with a knife.  (Trial Tr. 46-51, Sept. 22, 1992).  At this time, the trial judge called counsel to sidebar, said he found the testimony "terribly prejudicial," and ordered the jury to ignore any testimony about a prior incident with a knife.  (Trial Tr. 52-59, Sept. 22, 1992).  Despite this ruling by the trial court, the prosecutor subsequently made several references to this stabbing incident.

Immediately following the trial court's ruling, the prosecutor asked Mr. Williams:

> All right.  So, you said – we were at the point where you say you saw – you didn't see the defendant here pick up the knife, but you saw him at some point?

(Trial Tr. 59, Sept. 22, 1992).  An objection was immediately sustained.  The prosecutor then offered to withdraw the witness, but in doing so stated:

> Very well.  I'll have to – in view of your honor's ruling, I would have to excuse the witness.  Your honor wishes to hear nothing further about knives.

(Trial Tr. 60, Sept. 22, 1992).  Another objection was sustained.

Despite the prosecutor's offer to withdraw the witness, defense counsel conducted a short cross-examination in which the issue of the petitioner chasing the victim was raised.

6

Thereafter, on redirect examination, the prosecutor continued to
question Mr. Williams about the stabbing incident as follows:

> Q.   All you saw is this defendant chasing the
>      deceased, is that right, Aaron?
>
> A.   Yeah.
>
> Q.   Then you saw when Aaron came back, he said, "Look,
>      I'm stabbed"?

(Trial Tr. 61-62, Sept. 22, 1992).  Defense counsel objected
again and moved for a mistrial.  The objection was sustained, but
the motion for a mistrial was denied.  The trial court once again
instructed the jury to disregard any reference to a knife or
stabbing.

The following day, the prosecutor once again continued
to make reference to this stabbing incident.  In cross-examining
a defense character witness, John Banner, the prosecutor asked:

> All right.  Now, among the persons whom you've had
> these discussions with, that the defendant is a
> peaceful person, was there ever any discussion of an
> incident where he chased somebody around a car?

(Trial Tr. 10, Sept. 23, 1992).  The trial court sustained
another objection and instructed the jury to disregard the
question.

Later that day, during the recross-examination of
another defense witness, Naaem Frisby, who testified that the
petitioner was upset the night of the shooting, the prosecutor
asked:

> Did you know if he was upset at his prior incident that

7

happened involving a knife?

(Trial Tr. 27, Sept. 23, 1992).  After an objection, the prosecutor withdrew the question.  The trial court denied another motion for a mistrial, but once again instructed the jury in the "strongest possible terms" to disregard the question concerning the knife incident.

The prosecutor continued to make reference to this incident though.  When the petitioner took the stand on direct examination, he made reference to previous incidents between himself and the victim, but did not testify to the details of these incidents.  In his cross-examination of the petitioner, the prosecutor asked:

> Now, you mentioned the previous incident, sir, you brought it up, not I, you said that you were afraid of him because of a previous incident.  In other words, it made you terrified of this man because you stabbed him?

(Trial Tr. 79, Sept. 23, 1992).  Yet another motion for a mistrial was denied, but the jury was instructed to disregard the reference to a stabbing.

Finally, following some generalized references to a prior incident some months ago involving the petitioner and the victim by the petitioner's trial counsel in his summation, the prosecutor made three more references to this stabbing incident during his closing argument.  First, with respect to an incident where the victim assaulted the petitioner the night the victim was killed, the prosecutor stated:

8

Another fact is the thing that necessitated or caused this instance was a prior incident wherein the defendant was pursuing the deceased, and you heard what happened.

Second, referring to testimony that witnesses saw the petitioner chase the victim prior to shooting him, the prosecutor stated:

[W]hen you see that person [the victim], he starts to run away from you and you start to chase him and you're afraid of him?  I mean, does that make sense?  I'm afraid of somebody I'm chasing and that person is running away.  He had chased this person once before, the deceased, he chased him around cars.

Finally, the prosecutor argued:

And we know there was a prior incident where he [the petitioner] demonstrated such a propensity in chasing the deceased, trying to make it sound like it's so completely out of character, like this is something that never happened before in the whole life of this individual.  Nonsense.

We listened to or [sic] Orwin Greene, sounds like it's very much in character for him to do this, very much in character.  And if you listen to the witness Justin Williams who testified, when he said when the deceased said, remember, "My God, what's this man doing?"  He ran away.  That's what the deceased said when he was on the bus.  I mean, this isn't the first time, this isn't anything so unusual, but there's more.

(Trial Tr. 44-59, Sept. 24, 1992).  Defense counsel objected to the first two arguments, but not the third.  Additionally, some references by the prosecutor to the petitioner chasing the victim all the time were objected to.  (Trial Tr. 51, Sept. 24, 1992).  Following the petitioner's trial counsel's objections, the trial judge stated that the jury's recollection will control.

9

The petitioner's third claim of prosecutorial misconduct concerns statements made during the prosecutor's summation which referred to the petitioner's testimony as less than truthful.  The prosecutor made two such statements in his summation.  First, referring to testimony by the petitioner that he forgot certain aspects of the shooting, the prosecutor stated that:

> Why did he say that?  He virtually admitted everything else he said.  Well, this other business that's happened about the shooting and the man begging for his life and he pointed the gun at other people's heads, I'm not denying that, and I'm just going to say I can't remember it, can't remember it because he doesn't want to admit what he did in front of his family.  How do you forget something like that?
>
> That is something that's less than truthful, just as it was less that truthful when he said he was not looking for the man, he didn't load the gun.  The last witness that testified said his intention was to shoot him, that was his declared intention as he had declared it even an hour and a half before, his intention was to shoot, to kill, and he wasn't going to be stopped, he was determined he was going to do what he was going to do and nobody could stop him.
>
> He said that he was fearful.  So we know that when he testified that way, the defendant, he was less than truthful.  He was not fearful.

(Trial Tr. 47-48, Sept. 24, 1992).  Second, once again referring to the petitioner's testimony that he did not remember certain aspects of the shooting, the prosecutor stated, "[y]ou believe he forgot that, there's a bridge I'd like to sell you."  (Trial Tr. 53-54, Sept. 24, 1992).  Defense counsel did not object to either of these arguments.

10

Some of these challenged statements by the prosecutor were in response to arguments or questioning by the petitioner's trial counsel.  Specifically, the prosecutor may have understandably believed that the defense counsel opened the door to some of the questions and statements regarding the prior stabbing incident.  Although some of the challenged questions and comments may have been justified, the petitioner is correct in his assertion that the prosecutor made some improper comments.

The prosecutor improperly attempted to invoke sympathy for the victim and his family.  Although it is true that the petitioner's trial counsel made reference to the petitioner's age, those references were part of counsel's argument that the petitioner did not have time to cool down because of his youth. The prosecutor's statements regarding the victim's age did not go to the issue of whether the petitioner was in the heat of passion.  Instead, these statements had no other purpose beyond invoking sympathy from the jury for the victim and his family.

Although some of the references to the stabbing incident may have been justified by the defense counsel's repeated generalized references to a past incident involving the petitioner and the victim, the trial court was quite clear that specific references to a stabbing or knives were inadmissable. Additionally, the three references in the prosecutor's closing arguments to an incident that was clearly held to be inadmissable

11

were not proper, and the Court finds that the prosecutor's third reference to the stabbing incident during summation that suggested the petitioner had a propensity for violence was particularly prejudicial.  Finally, although it was appropriate for the prosecutor to make arguments regarding the petitioner's credibility during closing, the prosecutor should not have injected his personal opinion into summation by explicitly characterizing the petitioner's testimony as "less than truthful."

Although the Court finds that some improper remarks were made by the prosecutor, that does not end the inquiry.  The key question is not the culpability of the prosecutor, but the effect of the improper remarks on the petitioner's rights.  Marshall v. Hendriks, 307 F.3d 36, 68 (3d Cir. 2002).  Some of the effects of these remarks were cured by the trial court's instructions.  The trial court instructed the jury following closing arguments that their determination of the facts should not be affected by sympathy and that the jury is to judge the credibility of the petitioner.  Furthermore, throughout the trial, the judge was clear that the jury was not to consider any evidence regarding the stabbing incident.

That said, curative instructions do not mitigate all forms of prosecutorial misconduct.  Donnelly v. DeChristoforo, 416 U.S. 637, 644 (1974).  However, even if the curative

12

instructions alone were not effective to mitigate the improper statements by the prosecutor, in light of the overwhelming evidence against the petitioner, any such statements by the prosecutor did not deny the petitioner a fair trial.  See Marshall, 307 F.3d at 69.

Numerous eyewitnesses testified that the petitioner was the person who fatally shot the victim.  Although the petitioner claimed not to remember the actual shooting, the issue of who shot the victim was not seriously contested at trial.  In fact, the petitioner's trial counsel effectively conceded the issue of who shot the victim in his closing argument.

Instead, the petitioner's defense was based on the argument that he killed the victim in the heat of passion, and thus he did not commit first-degree murder, but a lesser degree of homicide.[4]  Even on this point though, the evidence against the petitioner was substantial.

Although the victim and a friend assaulted the petitioner the night of the shooting, approximately two hours elapsed between the fight and the shooting.  The evidence showed

---

[4] The petitioner did suggest on direct examination that he acted in self defense when he saw the victim reach for something, but that theory was not pursued by his trial counsel.  There were numerous witnesses that saw the petitioner chase the victim with a gun prior to the shooting and there was testimony that after the first shot, some time elapsed before the second fatal shot was fired while the victim was pleading for his life.  Thus, there was overwhelming evidence with which the jury could have found that the petitioner did not act in self defense.

that during that time, the petitioner went home, located a gun, took a shower, went to a party, located the victim, chased him and then shot him twice.  The second shot was fired after the victim was already immobilized and pleading for his life.

In light of the overwhelming evidence against the petitioner and the curative instructions given by the trial court, any improper statements by the prosecutor do not raise any doubt regarding the integrity of the verdict.  Looking at the trial as a whole, the Court concludes that the state court decisions were reasonable, under existing Supreme Court precedent, in their conclusion that any improper remarks did not deny the petitioner a fair trial.

## II. <u>Ineffective Assistance of Counsel Claims</u>

The petitioner has raised seven claims of ineffective assistance of counsel, five of which the Court will write separately about.[5]  The petitioner bases his ineffective assistance of counsel claims on arguments that his trial counsel: (1) failed to seek a mistrial based on the prosecutor's statements during summation that inflamed the passions of the

---

[5] The Court agrees with the report and recommendation's reasoning regarding the denial of the petitioner's claims of ineffective assistance of counsel based on arguments that his trial counsel failed to seek out expert witnesses and that his trial counsel did not contact witness that might have rebutted certain prosecution witnesses.

jury and failed to raise this issue in post-verdict motions; (2) failed to withdraw and failed to properly cross-examine a witness whom the petitioner's trial counsel represented in an unrelated juvenile criminal matter; (3) presented defense witnesses whose testimony supported the prosecution's case; and (4) failed to seek a mistrial after the prosecutor characterized the petitioner's testimony as less than truthful during summation.[6] The petitioner also claims that his appellate counsel failed to raise all issues regarding trial counsel's ineffectiveness on direct appeal.

With respect to the petitioner's claim that his appellate counsel did not raise all claims regarding his trial counsel's ineffectiveness on appeal, the report and recommendation concluded that this argument did not raise a separate cause of action, but that it simply supported other claims by the petitioner.  Even assuming that this claim is an independent claim, it has not been exhausted and is now procedurally defaulted.  The Superior Court did not reach this issue on the merits finding that it was not raised in the petitioner's PCRA petition and the petitioner did not appeal that

_____

[6] As was the case with the underlying prosecutorial misconduct claim, the Court has serious reservations whether this claim has been exhausted.  Because the Court will deny the petitioner's habeas petition, the Court can reach the merits of this claim even if it has not been exhausted.  See 28 U.S.C. § 2254(b)(2).

decision to the Pennsylvania Supreme Court.  Therefore this claim
will be denied.

That leaves four remaining ineffective assistance of
counsel claims.  The Court will consider these claims on the
merits.  To state an ineffective assistance of counsel claim, the
petitioner must show that his trial counsel's performance was
deficient and that the deficient performance prejudiced the
defense at trial.  Strickland v. Washington, 466 U.S. 668, 687
(1984).  To demonstrate prejudice, the petitioner "must show that
there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome."  Id. at 694.

The Pennsylvania Superior Court, on direct appeal,
denied the petitioner's claim that his trial counsel was
ineffective because he did not move for a mistrial following the
inflammatory comments made by the prosecutor during summation
because the underlying prosecutorial misconduct claim lacked
merit.  The Superior Court, on collateral review, denied the
petitioner's claim that his trial counsel was ineffective because
he failed to seek a mistrial after the prosecutor characterized
the petitioner's testimony as less than truthful for the same
reason.

Because the underlying prosecutorial misconduct claims

did not produce an unfair trial, the Court agrees with and finds reasonable the Superior Court's decision that the petitioner's trial counsel was not ineffective for failing to seek a mistrial. Furthermore, any claims that the petitioner's trial counsel was ineffective for failing to raise issues related to alleged prosecutorial misconduct in post-verdict motions are also denied because the underlying claims lack merit.

The Court will consider the petitioner's two remaining claims that his trial counsel was ineffective due to a conflict of interest and because he called witnesses helpful to the prosecution in turn.

First, the petitioner's conflict of interest claim is based on the fact that his trial attorney also represented a government witness in an unrelated juvenile proceeding and that representation was ongoing at the time of the petitioner's trial. During his rebuttal case, the prosecutor called Melvin Valle who testified regarding his interactions with the petitioner on the night of the shooting.  The petitioner's trial counsel was not aware that Mr. Valle would be called as a witness.  He was not on the witness list and the prosecutor represented that he had only been found recently.  After the trial court allowed Mr. Valle to testify, the petitioner's trial counsel brought the conflict to the trial court's attention.  The petitioner's trial counsel indicated that he spoke with Mr. Valle and that Mr. Valle

17

permitted the petitioner's trial counsel to cross-examine him and the trial court allowed the case to proceed.  There is nothing on the record that indicates the petitioner ever objected to or consented to this arrangement.

The Superior Court considered this issue on direct appeal and concluded that the petitioner's claim failed because his trial counsel acted reasonably in not impeaching Mr. Valle and that there was no evidence which would show that the petitioner's trial counsel possessed any confidential information that would have affected his cross-examination of Mr. Valle.

There are two potential ways a petitioner can proceed on a conflict of interest claim.  A petitioner can demonstrate an actual conflict or, a petitioner can proceed under a conventional ineffective assistance of counsel analysis.

When a petitioner did not raise any objections to a conflict at trial, to demonstrate an actual conflict, the petitioner must demonstrate: (1) some plausible alternative strategy or tactic that might have been pursued (this defense need not have been successful, but it must have been a viable alternative); and (2) that the alternative defense was inherently in conflict with or not undertaken because of the attorney's other duties or loyalties.  United States v. Morelli, 169 F.3d 798, 810 (3d Cir. 1999).  "An actual conflict exists only if the proposed alternative strategy (a) could benefit the instant

defendant and (b) would violate the attorney's duties to the other client." Id. at 811.

If an actual conflict exists, the petitioner need not show he was prejudiced. Id. at 810. If the petitioner cannot show an actual conflict, he may still proceed under a conventional ineffective assistance of counsel claim and must demonstrate prejudice. Id. at 810 n.15.

Here, the petitioner claims that his trial counsel should have crossed Mr. Valle on his juvenile crimes and use of aliases. The Court concludes that an actual conflict did not exist because cross-examining Mr. Valle on his juvenile crimes and use of aliases would not have been a viable alternative strategy.

Although Mr. Valle was a prosecution witness, he gave some testimony that was helpful to the petitioner's voluntary manslaughter defense. Specifically, Mr. Valle, who had known the petitioner for three years, testified that a short time before the victim was shot, the petitioner looked "crazy," that he did not appear to be in his right mind and that in three years, Mr. Valle had never seen the petitioner in such a state. (Trial Tr. 20-22, Sept. 24, 1992). Mr. Valle also offered testimony harmful to the petitioner, when he testified that prior to the shooting the petitioner stated he was going to kill the victim, that he loaded a gun and that Mr. Valle and a friend tried unsuccessfully

to talk the petitioner out of shooting the victim.   (Trial Tr. 10-13, Sept. 24, 1992).

Most of the testimony given by Mr. Valle that would support premeditation, was already in the record.   The petitioner himself had testified that he went home and got a gun, though he denied loading it.   (Trial Tr. 68, Sept. 23, 1992). Additionally, previous witnesses testified that the petitioner stated he was going to shoot the victim following their altercation earlier that day.

In light of this, the petitioner's trial counsel chose not to impeach Mr. Valle, but instead focused his cross-examination on bringing to light statements that the petitioner looked "crazy" and was acting abnormally in an attempt to establish a voluntary manslaughter defense.   The Court concludes that given the evidence introduced before Mr. Valle took the stand, it would not have been a viable alternative strategy to impeach Mr. Valle when he provided some testimony that was helpful to the petitioner's voluntary manslaughter defense and when much of the harmful testimony he gave was already in evidence.

Thus, the petitioner has not demonstrated an actual conflict of interest.   Furthermore, the petitioner cannot succeed under a conventional ineffective assistance of counsel claim because he was not prejudiced by any ineffectiveness on behalf of

his trial counsel.  Even if the petitioner's trial counsel's ongoing representation of Mr. Valle, although not an actual conflict, nevertheless rendered him ineffective, because of the overwhelming evidence against the petitioner, the petitioner cannot demonstrate a reasonable probability that the outcome would have been any different had his trial counsel either withdrawn or cross-examined Mr. Valle along the lines proposed by the petitioner.  See Strickland, 466 U.S. at 694.  Therefore, the Court finds that the Superior Court's decision to deny the petitioner's ineffective assistance of counsel claim based on a conflict of interest was reasonable under existing Supreme Court precedent.

Additionally, though not raised explicitly, the Court notes that the petitioner's brief in support of his habeas petition makes reference to a failure by the trial court to ask the petitioner about his attorney's conflict of interest. Although the Supreme Court has mandated that such an inquiry take place, a new trial is only appropriate if the petitioner can show an actual conflict or that he was prejudiced.  Mickens v. Taylor, 535 U.S. 162, 172-74 (2002).  Because the petitioner cannot make either of these showings, any claim that was raised regarding the trial court's failure to inquire into the petitioner's attorney's conflict of interest is denied.

The petitioner's final ineffective assistance of

counsel claim is that his trial counsel called as defense witnesses, individuals who provided testimony helpful to the prosecution.  The Superior Court denied this claim on direct appeal and concluded that the challenged witnesses bolstered the argument put forth by the petitioner's trial counsel that the petitioner was only guilty of voluntary manslaughter.

The three witnesses that are challenged by the petitioner are Naaem Frisby, Orwin Green and Hanif Edens.  All of these witnesses did corroborate the prosecution's case in that they testified that they saw or heard shots fired, that the victim fought with the petitioner a few hours before the shooting and that following the fight, the petitioner threatened to kill the victim.  However, these witnesses also furthered the voluntary manslaughter argument raised by the petitioner's trial counsel by testifying that the petitioner was angry, mad and/or upset following the fight.

A court should not find a defense attorney to be constitutionally ineffective simply because a strategy that was pursued at trial did not work.  Strickland, 466 U.S. at 689.  The petitioner's trial counsel acted reasonably in presenting these witness to further the voluntary manslaughter theory despite the fact they offered some testimony harmful to the petitioner. Thus, the Court finds that the Superior Court's conclusion that the petitioner's trial counsel was not ineffective for calling

these witnesses was reasonable under existing Supreme Court precedent.  Furthermore, even if calling these witnesses demonstrated that the petitioner's trial counsel was ineffective, the Court finds that the petitioner was not prejudiced.[7]  Even ignoring the testimony of these witnesses, the evidence against the petitioner was overwhelming and the overall result of the trial would not have been different.

For the foregoing reasons, as well as the reasons stated in the sections of the Report and Recommendation adopted by this memorandum, the petitioner's claims are denied and dismissed.  Because the petitioner has not made a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability.

An appropriate Order follows.

---

[7] The Court has considered the petitioner's ineffective assistance of counsel claims separately because they raise different legal issues.  However, even when viewing the combined effect of all the petitioner's ineffective assistance of counsel claims, the Court concludes that the petitioner was not prejudiced by any alleged ineffectiveness on behalf of his attorneys.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALAN EARP,                         :
                Petitioner,        :    CIVIL ACTION
                                   :
           v.                      :
                                   :
THOMAS LAVAN, et al.,              :
                Respondents        :    NO. 04-1991


ORDER

AND NOW, this 15th day of February, 2006, upon careful
and independent consideration of the petitioner's Petition for
Writ of Habeas Corpus (Docket No. 1), the petitioner's Memorandum
of Law in Support, the respondent's Response and the petitioner's
Traverse to the Answer and after review of the Report and
Recommendation of the Chief United States Magistrate Judge M.
Faith Angell (Docket No. 17), the petitioner's objections
thereto, and the respondents' response, IT IS HEREBY ORDERED
that:

1.    The Petitioner's objections are OVERRULED;

2.    The Report and Recommendation is ADOPTED, with
      certain modifications outlined in a memorandum of
      this date;

3.    The Petition for Writ of Habeas Corpus is DENIED
      AND DISMISSED without an evidentiary hearing; and

1

4.   The Petitioner has failed to make a substantial
     showing of a denial of a constitutional right;
     thus, a certificate of appealability is DENIED.


                    BY THE COURT:


                    /s/ Mary A. McLaughlin
                    MARY A. McLAUGHLIN, J.

2